IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| LESTER TOLIVER, ) | CASE NO. 7:19-CV-00213 |
|     Plaintiff ) | |
| ) | |
| v. ) | |
| ) | |
| USP LEE, et al., ) | By: Hon. Michael F. Urbanski |
|     Defendants ) | Chief United States District Judge |

## MEMORANDUM OPINION

Plaintiff Lester Toliver, proceeding pro se, alleges a violation of his rights under the Constitution and seeks relief under the holding in Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971). In addition, he alleges a claim under the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2674-2680 (FTCA). ECF Nos. 1, 7. Toliver, who has been released from custody since filing this lawsuit, claims defendants United States Penitentiary Lee, Officer J. Smallwood, Officer Beckenbeckler, Officer Mullins, and Lieutenant White used excessive force against him, conspired to cover up the mistreatment, and failed to provide him with adequate medical care while he was incarcerated at United States Penitentiary Lee in Jonesville, Virginia.

Defendants filed a motion to dismiss or in the alternative, a motion for summary judgment on October 1, 2019. ECF No. 28. Toliver filed a response, ECF No. 33, and defendants replied, ECF No. 35. Also pending is Toliver's motion for a speedy trial, ECF No. 43. For the reasons set forth below, defendants' motion to dismiss, or alternatively, for summary judgment is **GRANTED** and Toliver's claims are **DISMISSED** with prejudice. Toliver's motion for a speedy trial is **DENIED** as moot.

## BACKGROUND

**I. Factual Allegations**

In 2017 Tolliver was housed at the United States Penitentiary in Lee County, Virginia. Toliver asserts that in the late evening of November 27, 2017, he was in his cell at the prison when he collapsed to the floor due to unbearable pain from a toothache. ECF No. 7 at 5. His cellmate Arthur Chandler notified staff of an emergency by pressing the cell panic button. Id. When staff arrived, they cuffed Chandler, rushed into the cell with shields, and attached restraints to Toliver, who was unconscious. Once restrained, Toliver was carried out into the hallway, where he regained consciousness. One of the officers placed Tolliver on his knees and pointed a paintball gun at his head. ECF No. 1 at 2. Tolliver told the officers that he passed out because of his toothache pain and that he needed medical attention.

Toliver claims that the officers took him to a holding cell, stripped off his clothes, and put him in a paper gown. They then began to beat him, threatened him with being shot by a pepper paintball gun, and left him in restraints until the next day. ECF Nos. 1 at 2; 7 at 6. Toliver claims that he suffered from a massive headache, mouth pain from the toothache, pain is his back, and an injury to his toe from the assault by the officers. He claims that he received no medical care for any of his injuries or for the toothache for the rest of the night.

The next day, Toliver was taken to the nurse's station where a nurse checked his blood pressure and vital signs but offered no treatment for his injuries or toothache. ECF No. 1 at 3. Toliver was transferred to USP Atlanta on December 5, 2017, where his tooth was pulled on December 7, 2017. ECF No. 1 at 3; Med. Records, ECF No. 2 at 3-6. Three days later he was transferred to the Federal Transfer Center (FTC) in Oklahoma City, where X-rays were

taken of his back and he was given ibuprofen for pain. ECF No. 1 at 3; ECF No. 2 at 8-16. Toliver claims he suffered head, mouth, back, and left big toe pain as a result of the alleged use of excessive force and lack of immediate medical treatment. ECF No. 7 at 6.

Defendants' version of events differs from that of Toliver. In an incident report dated three days after the incident, defendant Beckenbeckler stated that on November 27, 2017 he responded to an unresponsive inmate, later identified as Toliver. Officers secured Toliver in hand and leg restraints and helped him to his feet when he attempted to kick Beckenbeckler with both feet. Toliver was removed from his cell and put in a holding cell to so that he could be changed into paper clothing. When Beckenbeckler knelt to remove the leg restraints so that he could help Toliver into paper pants, Toliver tried to kick Beckenbeckler in the face with his right leg. Incident Rep't, ECF No. 30-1 at 11.

Defendant Smallwood stated that after Toliver was observed to be lying unresponsive of the floor of his cell, a call for assistance went out over the radio and several staff members responded. A lieutenant told staff members to enter the cell to ascertain Toliver's well-being. Officers did so and attempted to put Toliver in restraints to remove him from the cell. Toliver became combative and resisted officers by kicking at them. Toliver was placed in restraints and removed from the cell, although he remained combative. Once in the holding cell, he was placed in ambulatory restraints in accordance with instructions from the Warden. Decl. of Justin Smallwood, ECF No. 30-2 at 2-3.

In an incident report, officer T. Thomas, who is not a defendant in this lawsuit, stated that he checked on Toliver at 6:30 a.m. on November 28, 2017, and Toliver was banging his

3

restraints against the wall in an attempt to defeat them. Thomas told Toliver to stop but he refused. Incident Rep't, ECF No. 30-1 at 12.

At 7:00 a.m. on November 28, 2017, Toliver was evaluated by a nurse in health services, who noted that his circulation was within normal limits in the ambulatory restraints. The nurse further noted that Toliver did not report any injuries and no injuries were observed. He did not appear to be in acute distress. Id. at 3; Med. Recs., ECF No. 30-2 at 6-9. At approximately 9:15 that morning it was noted that Toliver appeared to be compliant with staff directions and the ambulatory restraints were removed. Smallwood Decl., ECF No. 30-2 at 3.

## II. Causes of Action

Toliver makes the following claims: (1) defendants violated his Eighth Amendment right to be free of cruel and unusual punishment when they entered his cell, beat him, restrained him, and applied force maliciously; (2) defendants violated his rights under the Eighth Amendment when they refused him medical treatment for his severe toothache; (3) defendants violated his First, Fourth, Eighth, and Fourteenth Amendment rights by engaging in a conspiracy to develop and spread a false report to protect the officers involved from scrutiny and justify the use of force; and (4) USP Lee defendant supervisors are vicariously liable for the tortious actions of the subordinate officers. Toliver seeks damages in the amount of $1.1 million dollars. ECF Nos. 1, 7.

In their motion to dismiss and, alternatively, for summary judgment, defendants argue the following: (1) Toliver has failed to exhaust mandatory administrative remedies under the Prison Litigation Reform Act, 42 U.S.C. §1997e(a) (PLRA); (2) to the extent he is alleging an FTCA claim in this lawsuit, it is time-barred. (3) Toliver's allegations fail to state a claim of

4

excessive force or inadequate medical care; (4) Toliver cannot hold the individuals liable for constitutional violations based on vicarious liability; and (5) defendants are entitled to qualified immunity. Defendants also moved to dismiss the constitutional tort claims for lack of subject matter jurisdiction because the United States has not waived sovereign immunity for claims based on acts conducted by federal employees in their official capacities.

## DISCUSSION

### I. Exhaustion of Administrative Remedies in a Bivens Action

Defendants move to dismiss Toliver's Bivens action for failure to exhaust his administrative remedies. The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Claims in a Bivens action, like those in an action brought under 42 U.S.C. § 1983, must be administratively exhausted. Porter v. Nussle, 534 U.S. 516, 524 (2002). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524). "'[T]he language of section 1997e(a) clearly contemplates exhaustion prior to the commencement of the action as an indispensable requirement, thus requiring an outright dismissal [of unexhausted claims] rather than issuing continuances so that exhaustion may occur.'" Carpenter v. Hercules, No. 3:10cv241, 2012 WL 1895996, at *4 (E.D. Va. May 23, 2012) (emphasis in original) (quoting Johnson v. Jones, 340 F.3d 624, 628 (8th Cir. 2003)). The exhaustion requirement "allow[s] a prison to address complaints about the program it administers before being subjected to suit, reduc[es] litigation to the extent complaints are

5

satisfactorily resolved, and improv[es] litigation that does occur by leading to the preparation of a useful record." Jones, 549 U.S. at 219. Failure to exhaust all levels of administrative review is not proper exhaustion and will bar an inmate's action. Woodford v. Ngo, 548 U.S. 81, 90 (2006).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. Moore v. Bennette, 517 F.3d 717, 725, 729 (4th Cir. 2008); see Langford v. Couch, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he second PLRA amendment made clear that exhaustion is now mandatory.") But the court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." Aquilar-Avellaveda v. Terrell, 478 F.3d 1223, 1225 (10th Cir. 2007). Accordingly, an inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a).

An administrative remedy is not available "if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore, 517 F.3d at 725; see Blake v. Ross, 136 S.Ct. 1850, 1859 (2016) (pointing out that an administrative remedy procedure is unavailable when officers are consistently unwilling or unable to provide relief to inmates, the administrative scheme is opaque and becomes incapable of use, and when prison administrators thwart inmates from taking advantage of grievance processes through machination, misrepresentation, or intimidation); Spires v. Harbaugh, 438 F. App'x 185, 187 (4th Cir. 2011) (finding fact issue on exhaustion when plaintiff claimed to have submitted all paperwork but did not have receipts and did not receive responses, but specified enough secondary documentation to support his claim); Hill v. Haynes, 380 F. App'x 268, 273 (4th Cir. 2010) (finding issue on exhaustion when inmate alleged he requested BP-8 forms from

6

administrative specialist but never received them and defendants submitted no evidence to refute claim that officers destroyed his forms).

To exhaust a Bivens claim, a federal prisoner must properly raise his grievance through all four steps of the Bureau of Prison's (BOP) Administrative Remedy Program. See 28 C.F.R. §§ 542.10, et seq. The inmate must attempt informal resolution of his complaint with the appropriate BOP staff member by filing a BP-8, "Informal Resolution Form." Id. § 542.13. Assuming no satisfactory resolution is achieved, the inmate must file a BP-9, "Administrative Remedy Request Form," within twenty calendar days of the event giving rise to the grievance. Id. § 542.14. If the inmate is dissatisfied with that outcome, he must file a BP-10 form to appeal to the appropriate Regional Director within twenty days. Id. § 542.15(a). If the appeal is unsuccessful, the inmate must file a BP-11 form to the General Counsel within thirty days. Id. If the inmate does not receive a response within the time allotted for a reply at each level, the inmate may consider the absence of a response to be a denial at that level and may proceed to the next level. Id. § 542.18.

If an inmate believes the issue is sensitive and that his safety or wellbeing would be in danger if the request became known at the institution, he may file his request directly with the appropriate regional director. Id. § 542.14(d)(1). If regional office staff determines the issue is not "sensitive," the inmate receives written notice that the remedy has been rejected. Id. The inmate may then pursue the non-sensitive issue by filing a BP-9 with the warden, who must allow a reasonable extension of time to resubmit. Id.

Toliver concedes that he did not exhaust administrative remedies with regard to his Bivens claim. However, he argues administrative remedies were unavailable to him because

7

the officers conspired to cover up the incident and so raising a grievance with the prison staff would have been futile, and also because his immediate transfer after the incident hindered his access to the necessary documents to file a grievance and rendered administrative remedies unavailable.

Toliver submits no evidence in support of his claim that officers conspired to cover up the incident such that filing a claim would have been futile. While the court understands that it might be difficult for an inmate to produce evidence of a cover-up, defendants submitted copies of reports filed by two of the officers involved in the incident, dated November 28 and 30, 2017. ECF No. 30-1 at 11-12. Defendant Smallwood also acknowledged that the incident occurred in the declaration he submitted to the court. ECF No. 30-2 at 2-3. The officers' descriptions of the event differ from those of Toliver, but even if the officers were not truthful about what happened, they acknowledged that the incident occurred. Nothing about their reports indicates that it would have been futile for Toliver to file a grievance.

Defendants also submitted records showing that following the incident on November 27, 2017, Toliver was transferred to USP Atlanta eight days later, on December 5, 2017. He was transferred to FTC Oklahoma on December 8, 2017, where he stayed until December 21, 2017, when he was transferred to USP Pollock on December 21, 2017. Decl. of Destiny Spearen and Attach. A, ECF No. 35-1 at 1-4.

BOP Program statement 1330.18 provides that the deadline for submitting an initial grievance is twenty days following the date of the incident. Spearen Decl. and Attach. B., ECF No. 35-1 at 2, 5, 8. Inmates may request an extension when an inmate is in a situation which prevents him from timely submitting a request. Valid reasons include an extended period in

transit during which an inmate was separated from documents necessary to prepare the request or appeal and an extended period of time when an inmate was physically incapable of preparing a request or appeal. Id. at 2, 9.

Toliver had eight days from the day of the incident in which he could have begun the administrative remedy process, or he could have started it while he was in Atlanta or Oklahoma City. In addition, he could have requested an extension of time in which to file the initial grievance if he were unable to do so at USP Lee or during the time he was being transferred to the other facilities. His transfer after the incident did not make it impossible for him to begin the grievance process and courts consistently find that transfer to a different facility does not excuse the exhaustion requirement. See Lamerique v. United States, No. 3:18-cv-532, 2019 WL 2932673, at *9 (S.D. W. Va. 2019) (finding that transfer from the facility where allegedly wrongful acts occurred does not excuse obligation to fully exhaust administrative remedies and collecting cases). The court finds that administrative remedies were available to Toliver and his failure to exhaust administrative remedies means that he cannot now bring his Bivens claims in federal court.

The normal remedy for failure to exhaust under §1997e(a) is dismissal without prejudice; see, e.g., Booth v. Churner, 532 U.S. 731, 735 (2001). However, dismissal with prejudice is appropriate when the plaintiff can no longer begin the exhaustion process because the time for filing a grievance has passed. See Harris v. Elam, No. 7:17CV00147, 2020 WL 2079976, at *4 (W.D. Va. Apr. 30, 2020) (dismissing claims with prejudice upon a finding that the plaintiff could not begin the exhaustion process anew); McCoy v. Williams, No. 3:10CV349, 2011 WL 5153253, at *4 (E.D. Va. Oct. 28, 2011) (same). Because Toliver failed

9

to exhaust his administrative remedies before filing the instant action and the time for him to do so has passed, the court **GRANTS** defendants' motion to dismiss and **DISMISSES** the Bivens claims with prejudice.

### II. Timeliness of FTCA Claim

Under the FTCA, the United States is liable, as a private person, for "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting under the scope of his office or employment." 28 U.S.C. § 1324(b) (1994). Regarding the timeliness requirement for filing an FTCA claim in federal court, the FTCA provides the following:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing . . . of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401 (emphasis added). "Regulations promulgated pursuant to the FTCA provide that a claim is presented 'when a Federal agency receives from a claimant … an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death.'" Ahmed v. United States, 30 F.3d 514, 516 (4th Cir. 1994) (quoting 28 C.F.R. § 14.2). Pro se status does not absolve a plaintiff's obligation to strictly comply with statutory procedure. McNeil v. United States, 508 U.S. 106 (1993).

Toliver presented his FTCA claim to the BOP via its regional counsel for the mid-Atlantic region on July 16, 2018. ECF No. 30-1 at 9-10. The BOP denied his claim via letter dated August 9, 2018. See Letter, ECF No. 30-1 at 13. The letter specified to Toliver that "if

10

you are not satisfied with our determination in this matter, you may file suit in the appropriate U.S. District Court not later than six months after the date of this letter." Id. Six months after the date of the letter was February 9, 2019. Toliver filed his original complaint on February 28, 2019, nineteen days after the six-month deadline. See ECF No. 1 at 1.

Toliver concedes that he failed to exhaust administrative remedies under the FTCA because he failed to file suit in federal court within six months of the date of the denial letter. However, Toliver argues that his failure to file the action within the mandated timeframe should be forgiven because his prison was locked down during that time period.

The timing requirements set forth in § 2401(b) are non-jurisdictional and can be tolled on equitable grounds. United States v. Kwai Fun Wong, 575 U.S. 402, 412 (2015). To be entitled to equitable tolling, Toliver must demonstrate that he pursued his rights diligently and that some extraordinary circumstance stood in his way and prevented timely filing. Holland v. Florida, 560 U.S. 631, 649 (2010). Equitable tolling is reserved for "those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." Raplee v. United States, 842 F.3d 328, 333 (4th Cir. 2016) (quoting Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000)).

Toliver does not provide the dates the facility was locked down and does not allege that it was locked down for the entire six-month period following his receipt of the letter denying his FTCA claim. Moreover, a facility lockdown does not qualify as an extraordinary circumstance warranting equitable tolling of the statute of limitations. Allen v. Johnson, 602 F.Supp.2d 724, 727-28 (E.D. Va. 2009) (citing Warren v. Kelly, 207 F.Supp.2d 6, 10 (E.D.N.Y.

2002)). See also Gleaton v. Bush, No. 4:14-890-TMC, 2014 WL 5527826, at *7 (D.S.C. 2014) ("Prison conditions, such as lockdowns or misplacement of legal papers, are not normally grounds for equitable tolling."). Because Toliver filed his FTCA claim in this court nineteen days past the deadline, and because he has not shown that he is entitled to equitable tolling, his FTCA claim is **DISMISSED** as untimely filed.

As the court finds that Toliver's causes of action should be dismissed for failure to exhaust administrative remedies and as time-barred, it will not further address whether Toliver stated a claim sufficient to withstand defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6) or motion for summary judgment under Fed. R. Civ. P. 56.

## CONCLUSION

For the reasons stated above, the Court concludes that Toliver failed to exhaust his administrative remedies as required by the PLRA and accordingly cannot properly bring either the FTCA or Bivens claim before this court. Accordingly, defendants' motion to dismiss, ECF No. 28, is **GRANTED**, and Toliver's FTCA and Bivens claims are **DISMISSED** with prejudice. Toliver's motion to set a speedy trial date, ECF Nos. 43, is **DENIED as moot**. An appropriate order will be entered.

It is so **ORDERED**.

ENTERED: August 24, 2020

/s/ Michael F. Urbanski

Michael F. Urbanski
Chief United States District Judge